Keyser *v.* Margolis, Appellant.

Argued May 26, 1966. Before BELL, C. J., MUSMAN-NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*D. Arthur Magaziner,* with him *Burton Spear, Milton P. King,* and *Mancill, Sterling, Magaziner and Seamans,* for appellants.

*Daniel B. Pierson, V,* with him *D. Malcolm Anderson,* and *Raspin, Espenshade, Heins, Erskine & Stewart,* and *Griggs, Moreland, Blair & Douglass,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, September 27, 1966:

Appellee-plaintiff brought this suit in equity, alleging that under an oral agreement made in 1957, he,

Max Keyser, became a one-third partner with appellants in a wine-brokerage business known then as Margolis Associates, which subsequently became incorporated, and is now known as Margolis Associates, Inc. Appellee, in his complaint, prayed for an accounting from each and all of the appellants, and further prayed that a trusteeship as to one-third of the capital stock of the corporation be set up, and that stock be assigned to him.

Appellants contend that appellee joined the Margolis organization as an employee, that subsequently he had been offered a one-third share of the profits, but that this offer had never been accepted by the appellee. Appellants further contend that all of appellee's dealings were exclusively with Dorothy C. Margolis, one of the appellants, who had assumed control of the operation of the business because of the illness of her husband, John; that the appellee had no dealings whatsoever with Sheldon B. Margolis, the son of Dorothy and John, who, until he was made a partner on June 28, 1958, had been only an employee of Margolis Associates, nor with the First Pennsylvania Banking & Trust Company, the appointed guardian for John A. Margolis, who had been seriously ill since April 4, 1957, nor with Margolis Associates, Inc., a Pennsylvania Corporation organized in September of 1960.

Appellee and one of the appellants, Dorothy C. Margolis, signed a memorandum of employment dated June 14, 1957,[1] which set forth the terms of employment, and

---

[1] "Dear Mr. Keyser:

This will confirm our understanding in our telephone conversation that we have engaged you as Director of Sales in Pennsylvania, and that you have agreed to solicit orders and promote a demand for CVA brands and types of wine and other products sold by us as broker, with salary and expenses as follows:

(a) Salary at the rate of Seventy-five hundred ($7,500.) Dollars per annum, payable in sums of One hundred forty-four dollars and twenty-three cents ($144.23) weekly.

was accepted by the appellee.[2] During appellee's subsequent period of employment, there was a voluminous record of correspondence concerning appellee's contract, and on at least two occasions, appellant submitted proposed contracts to appellee, neither of which was accepted.

The issues came to trial on November 16, 1964, and the chancellor, after hearing the evidence, determined that appellee had entered into an agreement with Dorothy C. Margolis, acting on behalf of herself and the other appellants, except for her husband, John A. Margolis, and his appointed guardian, the First Pennsylvania Bank and Trust Company, as to whom the action was nonsuited. The chancellor denied the motion of appellants' counsel for a nonsuit with respect to Sheldon B. Margolis and Margolis Associates, Inc. The chancellor found that although the evidence was insufficient to show a valid partnership as contended by appellee, pursuant to an oral agreement, appellee-plaintiff was entitled to a one-third share of the profits of the business during the period of June 15, 1957, through June 30, 1963, and ordered an accounting for that period as to the sole proprietorship, the succeeding partnership, and the succeeding corporation, as well as

(b) Expenses at the rate of Seventy-five hundred ($7,500.) Dollars per annum, payable in sums of One Hundred forty-four Dollars and twenty-three cents ($144.23) weekly, any expenses in excess of this amount to be borne by you.

Kindly note your acceptance on the enclosed copy of this letter, and advise whether you wish to have a formal contract.

Yours very truly,

JOHN A. MARGOLIS
By: (s) D. C. Margolis

approved and accepted:
(s) Max Keyser"

[2] This was the only written agreement signed by both parties in this case evidencing the terms of employment of Max Keyser.

against Dorothy C. Margolis and her son, Sheldon B. Margolis, as the principal beneficiaries of the proceeds of the various business entities. The appellants-defendants filed exceptions to the chancellor's adjudication, argument was heard by a court en banc, and the exceptions to the adjudication were dismissed, and the decree nisi was entered as the final decree; this appeal followed.

" 'In passing upon the questions raised on this appeal we must adhere to the well-established rule that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal: [citing cases]. However, the chancellor's "conclusions, whether of law or ultimate fact are no more than his reasoning from the underlying facts and are reviewable" . . .' " *Shydlinski v. Vogt,* 406 Pa. 534, 537, 179 A. 2d 240 (1962).

We agree with the conclusion reached as set forth in the opinion of the court en banc that "The main thrust of the parties' complaint here is whether or not an oral agreement was made giving plaintiff a one-third interest in the profits.", but question its conclusion that the basis of this decision rests almost entirely upon the credibility of the witnesses before the chancellor. Certainly the voluminous correspondence between the parties cannot be ignored. The chancellor, in his findings of fact No. 7, (a), (b), (c), (d) and (e),[3] indicates some written agreement, although his

---

[3] "7. (a) At or about this time, Plaintiff signed, together with Dorothy, for Margolis, a letter agreement dated June 14, 1957. (b) The first paragraph of this letter reads: 'This will confirm our understanding in our telephone conversation that we have engaged you as Director of Sales in Pennsylvania, and that you have agreed to solicit orders and promote a demand for CVA brands and types of wine and other products sold by us as broker, with salary and expenses as follows:' (c) The second and third para-

subsequent conclusion of law No. 3,[4] indicates this was not intended by the parties to be the entire agreement. The chancellor refers also to other correspondence in his adjudication, and we can reach no other conclusion but that he certainly must have given considerable weight to this correspondence in reaching his decision, yet the court en banc's opinion of affirmance indicates almost total dependence on credibility of the witnesses appearing before the chancellor.

Appellee alleges that by reason of an oral agreement made in 1957, he is a one-third partner with the appellant-defendants in the enterprise. He prays for an accounting, and, in addition, the shares of stock to which he, as a partner, is entitled. If credence is attached to his oral testimony, and if the chancellor reached his conclusion on this basis alone, we fail to perceive how he reached his decision that although plaintiff was not a partner and was not entitled to any of the shares of stock of the corporation, he was, nevertheless, entitled to one-third of the profits of the enterprise for the period he was employed or associated. To find one and not the other appears to be most inconsistent. Had the chancellor believed appellee-plaintiff as a witness, why did he not allow all that was requested in the original complaint? The only reasonable conclusion that we can reach is that considerable weight must have been

graphs of the letter set forth the sums payable to Plaintiff as salary and expenses. (d) The fourth paragraph reads: 'Kindly note your acceptance on the enclosed copy of this letter, and advise whether you wish to have a formal contract.' (e) Plaintiff signed this letter-agreement to receive his compensation checks and with the understanding that he would subsequently receive a written agreement setting forth his share of Margolis profits, as agreed upon in conversation with Dorothy."

4 "3. The letter-agreement dated June 14, 1957 and signed by Plaintiff and Dorothy, for Margolis, was not intended to embody the entire agreement between Plaintiff and Margolis, and, therefore, parol evidence is admissible to show the entire agreement."

given to the voluminous correspondence between appellee and appellants. This correspondence refers on many occasions to a contract intended for appellee-plaintiff, yet on two occasions when contracts were offered to appellee, they were not accepted.

Furthermore, the only written agreement between the parties which was signed by both parties (the letter dated June 14, 1957), on its face indicates that it confirms an earlier conversation on the telephone as to plaintiff's position and compensation, and yet appellee-plaintiff failed to advise appellants on this letter, as requested, that he was desirous of obtaining a formal contract. As we said in *United Refining Co. v. Jenkins*, 410 Pa. 126, 134, 189 A. 2d 574 (1963): "The rule enunciated in Gianni v. Russell & Co., Inc., supra, is firmly embedded in the law of Pennsylvania and from that rule we will not permit a deviation for it is essential that the integrity of written contracts be maintained. In Grubb v. Rockey, 366 Pa. 592, 597, 79 A. 2d 255, we said: 'The modern Pennsylvania Parol Evidence Rule is well stated by Mr. Justice STEARNE in Walker v. Saricks, 360 Pa. 594, 598, 63 A. 2d 9: "This Court said in Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 323, 126 A. 791: 'Where parties, without any fraud or mistake, have deliberately put their engagements in writing, *the law declares the writing to be not only the best, but the only, evidence* of their agreement: [citing cases]. *All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract* . . . and unless fraud, accident or mistake be averred, *the writing* constitutes the agreement between the parties, *and its terms cannot be added to nor subtracted from by parol evidence*: [citing cases].'"' See also: O'Brien et al. v. O'Brien, supra; Bokser v. Lewis, 383 Pa. 507, 119 A. 2d 67; Keleher v. LaSalle College, 394 Pa. 545, 147 A. 2d 835." (Emphasis in original)

In reviewing the complaint and the record in its entirety, we find no averment or testimony of fraud, and, as we said in *Colonial Mort. S. Co. v. Melrose C.C.*, 416 Pa. 340, 342, 206 A. 2d 10 (1965) : "The law on this point is well settled that when the parties intentionally, and without fraud or mistake, reduce their agreement to a writing, then that writing is the best and only evidence of the terms of the agreement. Sokoloff v. Strick, 404 Pa. 343, 172 A. 2d 302 (1961), and cases cited therein. . . ." See also Restatement, Contracts, §§237, 238.

It is interesting to note that the proposed agreement, which appellee-plaintiff failed to sign and accept, has its very terms used as the basis for the chancellor's adjudication, while the opinion of the court en banc reads that ". . . for none of the proposed written agreements containing a one-third share of the profits for Plaintiff were ever formally accepted by Plaintiff."

Since we do not find facts or circumstances to permit the introduction of parol evidence to vary, alter or contradict the terms of the only mutually accepted writing embodying the terms of the disputed agreement, we cannot sustain the findings of ultimate fact and conclusions of law made below.

Decree reversed and complaint dismissed, each party to bear own costs.

Mr. Justice JONES and Mr. Justice EAGEN dissent. Mr. Justice ROBERTS dissents and would affirm the determination of the court below entitling Plaintiff to a 1/3 share of the profits.