### Fidelity Fund, Inc. v. DiSanto

*Walter.W. Ravin*, for plaintiff.
*Michael Tier and Michael Egnal*, for defendant.

SMITH, *J.*, December 15, 1982—Sur exceptions to the adjudication and decree nisi, defendant DiSanto contends an ex-employee can be restrained from using his ex-employer's trade secrets to his own advantage only if a restrictive covenant against his competing with his employer after termination of his employment existed between them. To this proposition DiSanto adduces no authority. Such a contention flies in the face of Morgan's Home Equipment Corporation v. Martucci, 390 Pa. 618, 136 A.2d 838 (1957), and United Insurance Company of America v. Dienno, 248 F. Supp. 553.

Otherwise, DiSanto urges that his conduct sought by his ex-employer, plaintiff, to be enjoined is akin to what in Spring Steel, Inc. v. Malloy, 400 Pa. 356, 162 A.2d 375 (1960), Burroughs Corp. v. Cimakaky, 346 F. Supp. 1398 (E.D., Pa. 1972), and Bettinger v. Carl Berke Associates, Inc., 455 Pa. 100, 314 A.2d 296 (1974), was held nonenjoinable, i.e., use by an ex-employee of lists of customers readily capable of being compiled from telephone directories or other public sources, and a knowledge of whose needs in particular lines of business was in no sense peculiar to or gained during the former

employment. To the contrary, knowledge of a customer's needs for particular varieties of insurance coverage and termination dates of such coverages as making the customer an apt prospect for sale of renewals of coverage has, in such authorities as Alexander, etc. v. Drayton, 378 F. Supp. 824 (E.D., Pa. 1974) aff'd 505 F.2d.729 (C.A. 3rd, 1974), been declared to be a trade secret of the former employer, so as to assimilate the present case with MacBeth-Evans Glass Co. v. Schnelbach, 239 Pa. 76, 86 Atl. 688 (1912), and Felmlee v. Lockhart, 466 Pa. 1, 351 A.2d 276 (1976). Felmlee quotes section 757 of the Restatement of Torts:

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and gives him an advantage over competitors who do not know or use it."

It is scarcely to be doubted that plaintiff's knowledge of the individual insurance coverage needs of its customers represents such a "compilation of information." Therefore, as constituting a trade secret, it was entitled to be protected by injunction against DiSanto's misappropriation of it.

Defendant Schiff Terhune, Inc., has filed exceptions to the adjudication, the essence of which is the contention that any information about its customers which plaintiff would be entitled to have protected as its trade secrets was what it originated and communicated to DiSanto, and could not be enlarged to include what he brought with him about customers he had served in his long years in the insurance industry. The difficulty with this contention is that DiSanto had not held an insurance broker's license for three years before becoming plaintiff's employee, nor for an additional three years thereafter, while he continued in plaintiff's employ. The information he brought with him about his former cus-

tomers could not possibly be his trade secrets; he was not the proprietor of a business, that is, a trade to which the information could be secret. For the proposition that forever and a day regardless of the lapse of his activity in the industry, or his re-engaging in it as only an employee (of plaintiff) he somehow retains a proprietary interest in his good will with former customers and his knowledge of their insurance needs, Schiff Terhune offers no authority any more than DiSanto. Even if DiSanto's relationship with the customers he had individually served prior to his entry into plaintiff's employ, and his knowledge of their insurance needs or of termination dates of their coverages were by some logical feat to be regarded as his trade secrets, there is not a word of testimony in the present record suggesting that on becoming plaintiff's employee, he vouchsafed this information to plaintiff under the seal of confidence so as to make plaintiff's use of it to its own advantage a violation of any such understanding. It requires no small stretch of the imagination to envision an employee being able to dictate such terms to a prospective employer. The reported cases are uniformly of parties in the reverse position, i.e., the employer enjoining confidence and secrecy upon the employee. In any event, the present record is silent and bare of any factual foundation for this indispensable element of the contention that DiSanto's trade secrets were appropriated by plaintiff, rather than the reverse.

Defendant Schiff Terhune excepts to the decree nisi as having imposed a constructive trust on the insurance commissions received by it from business brought to it by DiSanto without: (a) Any terms declaring a constructive trust to exist; (b) Without asserted, the requirements of such a conclusion having been satisfied.

It is not essential that the chancellor formalize his determination of a duty on the part of Schiff Terhune to account to and to reimburse plaintiff by reference to a particular legal concept of the law of restitution. Particularly is this so when the points on which that duty rests are self-evident: (1) Something of value constituting a res (here sums of money); (2) An equitable duty to convey that res to another person (here the plaintiff); (3) Unjust enrichment of the holder of the res were he not ordered to restore it to the deprived party. Comment to section 160 of the Restatement of the Law of Restitution reads:

"Even though what is transferred is money or a chattel which is not unique, the payor or transferor is entitled to maintain a proceeding in equity for specific restitution if the payment or transfer was procured by an abuse of a fiduciary or confidential relation."

The exceptions of both defendants are dismissed and the decree nisi is affirmed as a final decree.